EXHIBIT A

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is made and entered into this day of November 19, 2018, by and among (1) Plaintiffs Ophelia Parker and Joseph Naso (collectively, "Plaintiffs"), individually and on behalf of the Settlement Classes, (2) Defendants Legend Pictures, LLC, Legendary Pictures Funding, LLC (together, "Legendary"), Legendary Analytics, LLC (now known as Applied Analytics Solutions, LLC ("AAS")) and Universal Pictures, a division of Universal City Studios LLC ("Universal"), and (3) Handstack, P.B.C. ("Handstack"), subject to preliminary and final approval as required by Rule 23 of the Federal Rules of Civil Procedure.  Legendary, AAS, Universal and Handstack are collectively referred to as the "Defendants." Plaintiffs and Defendants are collectively referred to as the "Parties."  The Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Classes against Defendants in the action titled, *Naso, et al. v. Universal Pictures, et al.*, M.D. Fla. Case No. 6:16-CV-01193-CEM-DAB (the "Action") shall be settled and compromised upon the terms and conditions contained herein.

## I.   RECITALS

1.      On or around June 2016, Universal and Legendary released the movie *Warcraft*, based on the computer game of the same name.

2.      On or around April 2016, two months before the release of *Warcraft*, Legendary contracted with an independent company, Handstack, to conduct a text messaging campaign to promote the *Warcraft* film. Handstack sent text messages as part of this campaign beginning around May 2016 until on or around June 2016 (the "*Warcraft* Text Messaging Campaign").

3.      On June 30, 2016, Plaintiffs brought suit against Defendants in the United States District Court for the Middle District of Florida alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking, *inter alia*, monetary damages.

4.      Plaintiffs allege that they each received more than one text message as part of the *Warcraft* Text Campaign. Defendants deny the allegations alleged by Plaintiffs in the Action and further deny any and all liability to Plaintiffs or the putative class.

5.      In an effort to resolve this dispute, Legendary, AAS, Universal, and Plaintiffs participated in three full-day mediation sessions: one with Jay Cohen on April 26, 2018, and two with Rodney Max on October 16, 2018, and October 28, 2018.  During the third and final mediation, Legendary, AAS, Universal, and Plaintiffs agreed to the principal terms of a resolution of the Action.  Subsequently, Handstack and Plaintiffs also agreed to the principal terms of a resolution of the Action. The Parties now agree to settle the Action in its entirety without any admission of liability, with respect to all Released Claims, as defined below. The Parties intend this Agreement to bind Plaintiffs, Defendants, and all members of the Settlement Classes who do not timely request to be excluded from the Settlement.

6.      Defendants continue to dispute their respective liability for the claims alleged in the Action, and maintain that they complied, at all times, with applicable laws and regulations. Defendants do not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

7.      Class Counsel believes that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set

forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the Action.

8.      Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Classes. Class Counsel have considered that, if the claims asserted are not settled now by voluntary agreement among the parties, future proceedings (including appeals) would be protracted and expensive, would involve highly complex legal and factual issues relating to class certification, liability, and damages, and would involve substantial uncertainties, delays, and other risks inherent in litigation.  In light of these factors, Class Counsel have concluded that it is desirable and in the best interests of Plaintiffs and the members of the putative class to settle the claims asserted in the lawsuits at this time on the terms set forth herein, and that the settlement terms confer exceptional benefits upon Settlement Class Members.

**NOW, THEREFORE**, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.      <u>DEFINITIONS</u>

9.      "Action" means *Naso, et al. v. Universal Pictures, et al.*, M.D. Fla. Case No. 6:16-CV-01193-CEM-DAB.

10.     "Cell phone Number List" means the list of unique cell phone numbers that were sent a text message as part of the *Warcraft* Text Messaging Campaign.

11.     "Claim" or "Claim Form" means a written or electronic submission made to the Settlement Administrator by a Settlement Class Member for the purpose of participating as a Settlement Class Claimant in this Action.

12.     "Claimant" means a Settlement Class Member who timely submits a Claim Form in accordance with the terms of the Agreement.

13.     "Class Counsel" means:

> Edmund A. Normand
> Alex R. Couch
> NORMAND PLLC
> 3165 McCrory Place, Suite 175
> Orlando, FL 32803
> Tel: 407.603.6031
>
> William C. Gray
> GRAY LLC
> 17 N. State Street
> Suite 1600
> Chicago, IL 60602
> Tel: 312.278.7900

14.     "Claims Deadline" means the last day that Settlement Class Members may submit a Claim Form to the Settlement Administrator.  The Claims Deadline shall be 90 days after Preliminary Approval is granted.

15.     "Class Period" means the period from May 1, 2016, through the date of class certification.

16.     "Contact Information Records" means the list of cell phone numbers along with names, email addresses, and physical addresses associated with the cell phone numbers that were sent a text message as part of the *Warcraft* Text Messaging Campaign (i.e., the Cell phone Number List).  The cell phone numbers included on the Cell phone Number List are a subset of the cell phone numbers included in the Contact Information Records.

17.     "Court" means the United States District Court for the Middle District of Florida, Orlando Division.

18.     "Defense Counsel" means Legendary, AAS and Universal Counsel and Handstack Counsel, together.

19.     "Effective Date" means the fifth business day after the last of the following events have occurred:

   a.     The Court has entered without material change the Final Approval Order; and

   b.     The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or *certiorari* could be taken has finally expired and relief from a failure to file same is not available.

20.     "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a service award to each Plaintiff.

21.     "Final Approval Order" means the order and final judgment that the Court enters upon Final Approval.  If the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

22.     "Handstack Counsel" means Smolder Bartlett Loeb Hinds & Thompson.

23.     "Legendary, AAS, and Universal Defense Counsel" means the law firms of Irell & Manella LLP and Greenberg Traurig, LLP.

24.     "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.  The forms of the proposed Short-form Notice, which will be sent to Settlement Class Members via email (and then via postcard for any email that is not deliverable), and Long-form Notice, which will be posted on the Settlement Website, agreed upon by Class Counsel and Defendants, are attached as EXHIBITS 1-2.

25.     "Notice Program" means the methods provided for in Paragraphs 53-55 of this Agreement for giving the Notice.

26.     "Opt-Out Deadline" means the deadline by which Settlement Class Members can opt out of the Settlement and shall begin as of the date the Notice is emailed to Settlement Class Members and ends 35 days thereafter. The date of the Opt-Out Deadline will be specified in the Notice.

27.     "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

28.     "Released Claims" means all claims to be released as specified in this Agreement. The "Releases" means all of the releases contained in this Agreement.

29.     "Released Parties" means those persons released as specified in the Releases.

30.     "Releasing Parties" means Plaintiffs and all Settlement Class Members who do not timely and properly opt-out of the Settlement, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, representatives and all those who claim through them or on their behalf.

31.     "Settlement" means the settlement into which the Parties have entered to resolve the Action.

32.     "Settlement Administrator" is JND Legal Administration. The Parties may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally.  In the absence of agreement, either party may move the Court to substitute a different organization as Settlement Administrator upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

33.     "Settlement Classes" is defined in paragraph 36 hereof.

34.     "Settlement Class Member" means any person included in any of the Settlement Classes who does not opt-out of the Settlement.

35.     The "*Warcraft* Text Messaging Campaign" means the text messaging campaign conducted by Handstack in relation to the *Warcraft* film between or around May 2016 through June 2016.

## III.     CERTIFICATION OF THE SETTLEMENT CLASSES

36.     For settlement purposes only, the Parties agree to ask the Court to certify the following "Settlement Classes" under Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure:

a.      The "ATDS Class" consists of all persons or entities within the United States who received one or more text messages as part of the *Warcraft* Text Messaging Campaign.  The Parties estimate there are up to 466,779 members of the ATDS Class.

b.      The "Internal-Do-Not-Call Class" consists of all persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign, one of which was received after the class member submitted a request to not receive additional texts.  The Parties estimate that there are up to 1,897 members of the Internal-Do-Not-Call Class.

c.    The "National Do-Not-Call Class" class consists of all persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign (a) in a 12-month period; and (b) more than 30 days after the placement of their number on the National Do-Not-Call Registry.  The Parties estimate there are up to 51,407 members of the National-Do-Not-Call Class.

d.    The "Out of Time Class" class will consist of all persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign, at least one of which was before 8 A.M. or after 9 P.M. local time at the texted person's location. The Parties estimate there are up to 4,461 members of the Out of Time Class.

37.    Excluded from the Settlement Classes are (1) the trial judge presiding over this case; (2) Defendants, as well as any parent, subsidiary, affiliate or control person of Defendants, and the officers, directors, agents, servants or employees of Defendants; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely opted out of the Settlement; and (6) Class Counsel, their employees, and their immediate family.

## IV.   <u>PRELIMINARY SETTLEMENT APPROVAL</u>

38.    Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for an Order granting Preliminary Approval of this Settlement ("Preliminary Approval Order"). The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Defendants. The motion for Preliminary Approval shall request that the Court: (1) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (2) provisionally certify the Settlement Classes pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (e) for settlement purposes only; (3) appoint the Plaintiffs as class representatives and Normand PLLC and Gray LLC as Class Counsel; (4) approve the Notice Program set forth herein and the form and content of the Notices; (5) approve the Claims process; (6) approve the procedures for Settlement Class Members to exclude

themselves from the Settlement Classes or to object to the Settlement; (7) stay the Action

pending Final Approval of the Settlement; and (8) schedule a Final Approval hearing for a time

and date mutually convenient for the Court, Class Counsel and counsel for Defendants, at which

the Court will (i) conduct an inquiry into the fairness of the Settlement, (ii) determine whether it

was made in good faith, and (iii) determine whether to approve the Settlement and Class

Counsel's application for attorneys' fees, costs and expenses and a Service Award to each

Plaintiff ("Final Approval Hearing").

## V.    SETTLEMENT CONSIDERATION

### A.    Settlement Award

39.    In exchange for the mutual promises and covenants in this Agreement, including,

without limitation, the Releases and the dismissal of the Action upon Final Approval, Legendary,

and no other defendants, agrees to make a total of up to $19,225,515.00 (the "Total Settlement

Amount") available for settlement of valid claims, settlement administration costs, attorneys'

fees, a service award to each Plaintiff, and costs and expenses of the litigation.  In no event shall

Legendary, on behalf of itself and all other Defendants, be obligated to pay more than the Total

Settlement Amount as part of the Settlement.

40.    Each Settlement Class Member who timely submits a valid claim in accordance

with the Claims process described in Paragraphs 58-63 below, and who does not opt-out of the

Settlement, will be entitled to receive a "Settlement Award" for each Settlement Class of which

he or she is a member.  The Settlement Award for members of the ATDS Class will be $35.  The

Settlement Award for members of the Internal-Do-Not-Call, National-Do-Not-Call, and Out of

Time classes will be $50 for each of the classes.  Payment of Settlement Awards will be made

based on the criteria set forth in, and subject to the terms of, Paragraph 64.  There is a limit of

one claim per Settlement Class.

B.    Injunctive Relief

41.    In consideration for the Release contained in this Agreement, and without admitting liability for any of the alleged acts or omissions, and in the interest of minimizing the costs inherent in any litigation, within seven (7) calendar days after execution of this Agreement, Handstack will implement the following changes in connection with their actions and thus agree to the following stipulated injunctive relief:

a.    Handstack, for itself or for any client, will not use the Cell phone Number List or any part of it to send or direct any text message and will not provide the Cell phone Number List to any other person or entity;

b.    Should Handstack, on behalf of itself or for any client, carry out any telemarketing using its web-based platform for sending to groups and receiving return text messages (the "Handstack Platform") as used for the *Warcraft* Text Message Campaign, to a cellular telephone service, Handstack shall be subject to the following terms:

1.    Handstack shall maintain and create a database of individuals who have provided prior consent as required by the TCPA or the rules and regulations promulgated thereunder, to receive such calls/texts, including the date and manner in which such consent was obtained;

2.    Handstack shall implement reasonable procedures to ensure that no phone number on the National Do Not Call Registry is called/texted absent prior express consent from the person assigned the number; and

3.    Handstack shall develop and implement a written TCPA compliance

policy, which includes maintaining an internal opt-out list for any future telemarketing campaigns.

Unless such call/text is made to collect a debt owed to or guaranteed by the United States, made for emergency purposes, made with prior express consent of the called party, or otherwise made in compliance with the TCPA, the rules and regulations promulgated thereunder, and/or applicable case law, or made as an individual acting in the course of a business in which Handstack has no control over or authority to determine TCPA compliance or Handstack does not initiate the sending of text messages.

42.     In consideration for the Release contained in this Agreement, and without admitting liability for any of the alleged acts or omissions, and in the interest of minimizing the costs inherent in any litigation, within seven (7) calendar days after execution of this Agreement, Legendary, AAS, and Universal will implement the following changes in connection with their actions and thus agree to the following stipulated injunctive relief:

a.  Legendary, AAS, and Universal will neither send nor direct any other person or entity to send any text messages to market, promote, publicize, or advertise the *Warcraft* film;

b.  Legendary will not employ the services of Handstack P.B.C. to send text messages to market, promote, publicize, or advertise any of Defendants' products or services.

43.     Before any person or entity may initiate any court proceeding alleging that Legendary, AAS or Universal have breached the injunctive relief set forth above, that person or entity must serve written notice on Legendary, AAS or Universal along with their Defense Counsel stating with specificity the basis for this allegation.  Legendary, AAS or Universal will

then have thirty (30) calendar days from receipt of notice to cure any alleged breach.  No person

or entity may initiate any court proceeding alleging that Legendary, AAS or Universal have

breached the injunctive relief set forth above until this thirty (30) calendar day period has

expired.

44.     The notice described in the preceding paragraph must be sent the following as

applicable:

**LEGENDARY**
Dan Feinberg
Senior Vice President, Corporate Counsel
Legendary Entertainment
2900 W Alameda Ave Fl 15,
Burbank, CA 91505

**UNIVERSAL**
Tania Hoff
NBCUniversal
Senior Vice President, Litigation
100 Universal City Plaza
Bldg. 1280, Suite 9
Universal City, CA 91608

**AAS**
David C. Vigilante
Applied Analytics Solutions, LLC
Senior Vice President – Legal
One CNN Center, 9S
Atlanta, GA 30303

**DEFENSE COUNSEL**
Steven A. Marenberg
IRELL & MANELLA, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Robert J. Herrington, Esq.
GREENBERG TRAURIG LLP
1840 Century Park E., Suite 1900
Los Angeles, CA 90067

Gregory W. Herbert, Esq.

GREENBERG TRAURIG LLP
450 South Orange Ave., Suite 650
Orlando, FL 32801

45.     Before any person or entity may initiate any court proceeding alleging that

Handstack has breached the injunctive relief set forth above, that person or entity must serve

written notice on Handstack Defense Counsel at the following address stating with specificity the

basis for this allegation:

Colin Thompson
SMOLKER, BARTLETT, LOEB,
HINDS & THOMPSON, P.A.
100 N. Tampa Street, Suite 2050
Tampa, Florida 33602

Handstack will then have thirty (30) calendar days from receipt of notice to cure any alleged

breach.  No person or entity may initiate any court proceeding alleging that Handstack has

breached the injunctive relief set forth above until this thirty (30) calendar day period has

expired.

## VI.     SETTLEMENT ADMINISTRATOR

46.     The Settlement Administrator shall administer various aspects of the Settlement

as described herein and perform such other functions as are specified elsewhere in this

Agreement, including, but not limited to:

a.   obtaining from Class Counsel and Defendants cellular telephone information, and

to the extent it is available, name, email, and address information, for Settlement

Class Members;

b.   determine associated email and physical addresses that might exist for any

Settlement Class Members using the Contact Information Records and Cell phone

Number List and verifying and updating the addresses received through the

National Change of Address database;

c.   providing Notice by email (to the extent reasonably ascertainable);

d.   providing Notice by postcard (to the extent emails are not available);

e.   providing Long Form Notice;

f.   providing Defense Counsel and Class Counsel with the Class Member ID and associated number on the Cell Phone List for each Settlement Class Member within one (1) day of when it begins to provide Notice;

g.   establishing and maintaining the Settlement Website;

h.   establishing and maintaining a post office box for requests for exclusion from the Settlement Classes;

i.   receiving, evaluating, and processing Claim Forms;

j.   advising Settlement Class Members if their Claim Forms are deficient;

k.   providing weekly reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel and Defendants' counsel;

l.   establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries;

m.   responding to any Settlement Class Member inquiries;

n.   processing all requests for exclusion from the Settlement Classes;

o.   in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Classes;

p.   distributing Settlement Awards, Service Awards and Attorneys' Fees.

q.   Providing required notification to appropriate State and Federal officials to the

extent required by 28 U.S.C. § 1715.

47.     The costs incurred by the Settlement Administrator in the administration of the

Settlement (the "Administrative Costs") will be paid by Legendary.  Legendary shall negotiate

with the Settlement Administrator the timing and amount of payment. Administrative Costs of up

to $750,000 shall be paid out of the Total Settlement Amount.

## VII.     NOTICE TO THE SETTLEMENT CLASSES

### A.     Contents of Notice

48.     Upon Preliminary Approval of the Settlement, at the direction of Class Counsel

and Defendants, the Settlement Administrator shall implement the Notice Program provided

herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The

Notice shall include, among other information: a description of the material terms of the

Settlement, including instructions on how to file a Claim Form; a date by which Settlement Class

Members may exclude themselves from or "opt-out" of the Settlement Classes; a date by which

Settlement Class Members may object to the Settlement; the date upon which the Final Approval

Hearing is scheduled to occur; the address of the Settlement Website at which Settlement Class

Members may access the Claim Form, this Agreement, and other related documents and

information; and a unique numerical identifier for each Settlement Class Member.  Class

Counsel and Defendants shall insert the correct dates and deadlines in the Notice before the

Notice Program commences, based upon those dates and deadlines set by the Court in the

Preliminary Approval Order.

49.     The Notice shall include a procedure for Settlement Class Members to opt-out of

the Settlement Classes. A Settlement Class Member may opt-out of the Settlement Classes at any

time prior to the Opt-Out Deadline. Any Settlement Class Member who does not timely and

validly request to opt-out shall be bound by the terms of this Agreement..

50.     The Notice shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to each Plaintiff. Objections to the Settlement, to the application for fees, costs, expenses and/or for the Service Awards must be mailed to the Clerk of the Court, Class Counsel, and Defendants. For an objection to be considered by the Court, the objection must be submitted no later than the Opt-Out Deadline, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., FedEx), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

51.     The Parties will include in the motion for Preliminary Approval and draft order the following recommendations to the Court for the requirements for any objections to be valid and considered by the Court. Written objections must be verified by a declaration under the penalty of perjury or a sworn affidavit and must include:

a.   the name of the Action;

b.   the objector's full name, address and telephone number;

c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.   all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.   the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the

caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.   the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

h.   a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

i.   the objector's signature (an attorney's signature is not sufficient).

52.   Settlement Class Members, or their attorneys, intending to make an appearance at the Final Approval Hearing, must also deliver to Class Counsel, Legendary, AAS and Universal Counsel, and Handstack Counsel, and file with the Court a Notice of Intention to Appear no later than 35 calendar days after notice starts being provided under paragraph 53. Only Settlement Class Members who file and timely serve Notices of Intention to Appear may speak at the Final Approval Hearing.

B.   <u>The Notice Program</u>

53.   The Settlement Administrator shall implement the following notice program:

a.   First, the Parties will provide the Settlement Administrator with the Contact Information Records and the Cell phone Number List.  The Settlement Administrator shall then match (to the extent possible) each cell phone number that was sent a text message as part of the *Warcraft* Text Messaging Campaign (as

indicated on the Cell phone Number List) to a corresponding name, physical address, and email address contained on the Contact Information Records.

b.   Second, the Settlement Administrator shall send an email containing the Notice to all email addresses identified at step one.  This process shall be completed either 3 business days after Preliminary Approval or 10 business days after the Settlement Administrator receives the Contact Information Records and Cell phone Number List, whichever is later.  The Parties will provide the Settlement Administrator with the Contact Information Records and Cell phone Number List within seven (7) days of the execution of this Agreement.

c.   Third, to the extent that any email cannot be delivered, the Settlement Administrator shall, to the extent reasonably possible, mail to the Settlement Class Member a postcard containing the Notice.  Before sending the postcard, the Settlement Administrator shall run the Settlement Class Member's address (as indicated on the Contact Information Records) through the National Change of Address Database and update the Settlement Class Member's address if necessary.  This process shall be completed no later than 21 days after Preliminary Approval or 21 days after the Settlement Administrator receives the Contact Information Records and Cell phone Number List, whichever is later.

d.   Fourth, in addition to the above, the Settlement Administrator shall create and maintain the Settlement Website, which will contain the Long-Form Notice, the Complaint, and Motion for Fee Award and/or Motion for Final Approval (if filed concurrently, within three (3) days of filing). The Full Notice will be substantially similar to the form attached as Exhibit 1.  The Internet Posting will be active until

45 calendar days after the entry of the Final Approval Order.

54.     The Settlement Administrator shall provide Class Counsel and Defendants an affidavit that confirms that the Notice Program was completed in a timely manner. Class Counsel shall file that affidavit with the Court as an exhibit to and/or in conjunction with Plaintiffs' motion for Final Approval of the Settlement.

55.     Within the parameters set forth in this Agreement, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Defendants.

## VIII.   **FINAL APPROVAL ORDER**

56.     The Plaintiffs' Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.   Class Counsel shall file their Motion for Final Approval of the Settlement, and application for attorneys' fees, costs and expenses and for a service award for each Plaintiff, no later than 30 days prior to the Final Approval Hearing.  At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for a Service Award for each Plaintiff.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost, expense or Service Award application, provided the objectors submitted timely objections that meet all of the requirements listed in the preliminary approval order and notice.

57.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement and entering final judgment thereon, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and service awards.  The proposed Final Approval Order shall be in a form agreed

upon by Class Counsel and Defendants.  Such proposed Final Approval Order shall, among other things:

    a.   Determine that the Settlement is fair, adequate and reasonable;

    b.   Finally certify the Settlement Classes for settlement purposes only;

    c.   Determine that the Notice provided satisfies Due Process requirements;

    d.   Enter judgment dismissing the Action with prejudice and without costs, except as set forth in this Agreement;

    e.   Bar and enjoin all Releasing Parties from asserting any of the Released Claims, including during any appeal from the Final Approval Order;

    f.   Release Defendants and the Released Parties from the Released Claims; and

    g.   Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of administering, supervising, construing and enforcing this Agreement in accordance with its terms.

## IX.   <u>CLAIMS PROCESS</u>

    58.    Each member of the Settlement Classes who does not timely opt-out from the Settlement shall be a Settlement Class Member and entitled to make a Claim.  To make a Claim, Settlement Class Members must submit by the Claims Deadline a valid and timely Claim Form, a copy of which is attached hereto as EXHIBIT 3, which will be accessible through the Settlement Website. The Claim Form shall contain the Settlement Class Member's: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent a text message as part of the *Warcraft* Text Messaging Campaign; (4) a current contact telephone number; (5) a statement identifying whether the cell phone number was a residential or business line; (6) the unique numerical identifier included on the Notice; and (7) a signed verification swearing to the

truth of the information provided.

59.     Claim Forms that do not meet the requirements set forth in this Agreement and in the Claim Form instructions shall be rejected.  Where a good faith basis exists, the Settlement Administrator may reject a Settlement Class Member's Claim Form for, among other reasons, the following:

    a.   Failure to fully complete and/or sign the Claim Form;

    b.   The cellular telephone number provided in the Claim Form does not match any number on the Cell phone Number List;

    c.   The unique numerical identifier listed on the Claim Form does not match the number that was provided with the notice;

    d.   The Claim Form is illegible;

    e.   The person submitting the Claim Form is not a Settlement Class Member;

    f.   The Claim Form is fraudulent;

    g.   The Claim Form is duplicative of another Claim Form;

    h.   The person submitting the Claim Form requests that payment be made to a person or entity other than the Class Member for whom the Claim Form is submitted;

    i.   Failure to submit a Claim Form by the Claim Deadline; and/or

    j.   The Claim Form otherwise does not meet the requirements of this Agreement.

60.     After rejecting a Claim Form, the Settlement Administrator will then attempt to notify the Settlement Class Member that his or her Claim Form was rejected and the reasons for the deficiency.  Any Settlement Class Member who submits an incomplete, inaccurate or otherwise deficient Claim Form shall be permitted to re-submit a Claim Form by the later of the Claims Deadline or 15 days of the sending of notice of the defect by the Settlement

Administrator.

61.     Class Counsel and Defense Counsel shall have the right to inspect the Claim

Forms and supporting documentation received by the Settlement Administrator at any time upon

reasonable notice.

62.      No person shall have any claim against Defendants (including their insurers),

Defense Counsel, Plaintiffs, Class Counsel, the Settlement Classes, and/or the Settlement

Administrator based on any eligibility determinations, distributions, or awards made in

accordance with this Settlement.

63.     Any Settlement Class Member who fails to submit a Claim Form by the Claim

Deadline, and who does not opt out of the Settlement, shall be forever barred from receiving any

benefit pursuant to this Settlement, but shall in all other respects be bound by all of the terms of

this Settlement including the terms of the Final Approval Order and Final Judgment to be entered

in the Action and the releases provided for herein, and will be barred from bringing any action in

any forum (state or federal) against any of the Released Parties concerning any of the Released

Claims.

## X.     <u>DISTRIBUTION OF SETTLEMENT AWARD</u>

64.     The payment of Settlement Awards will be made on a claims made basis.  To the

extent that the total Settlement Awards claimed, plus the Administrative Costs, Attorneys Fees,

and Service Awards as those are determined and defined herein, exceeds the Total Settlement

Amount, each individual Settlement Award will be reduced in equal proportion by an amount no

greater than necessary to prevent such an occurrence.

65.     No more than 14 days after the Effective Date, the Settlement Administrator will

calculate the total of (1) all Settlement Awards claimed; (2) Attorneys' Fees, and (3) Service

Awards and inform the Parties of the resulting amount.  Then, within 30 days, Legendary will deposit an amount equal to this total to be maintained and distributed by the Settlement Administrator (the "Settlement Account").

66.    The Settlement Administrator shall distribute the Settlement Account in the following manner:

a.  Within 14 days after funds are deposited into the Settlement Account, the Settlement Administrator shall distribute the Service Award to each Plaintiff;

b.  Within 14 days after funds are deposited into the Settlement Account, the Settlement Administrator shall distribute the Attorneys' Fees to Class Counsel;

c.  Within 120 days after funds are deposited into the Settlement Account, the Settlement Administrator shall distribute Settlement Awards via U.S. mail to the addresses listed in the Claim Forms in the form of checks made payable to the Settlement Class Members.  If any Settlement Award payments are returned as undeliverable, the Settlement Administrator shall attempt to verify the accuracy of the mailing address for that Settlement Class Claimant against the information provided in the Claim Form and attempt a second mailing if appropriate.  No further efforts need be taken by the Settlement Administrator to resend the check. Any checks that are not deposited and cleared within one hundred eighty (180) days shall be null and void and the Settlement Class Member will become ineligible to receive a Settlement Award. Defendants shall have no further obligation to make any payment pursuant to this Settlement or otherwise to such Settlement Class Members. All unpaid funds from uncleared checks shall be distributed back to Legendary and Legendary shall have no further obligation

after the distribution back to pay any further amounts.

## XI.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

67.    Class Counsel will request attorneys' fees of no more than 23.41% of the Total

Settlement Amount and for reimbursement of costs and expenses of no more than $200,000.

Defendants agree not to oppose a request that satisfies these requirements.  The amount of fees

and costs and expenses awarded to Class Counsel ("Attorneys' Fees") will be at the discretion of

the Court.  The Parties agree that the Court's failure to approve, in whole or in part, any award

for fees or cost and expenses shall not prevent the Settlement from becoming effective, nor shall

it be grounds for termination of the Settlement.

68.    Class Counsel will ask the Court to approve a service award of $5,000 for each

Plaintiff.  Defendants agree not to oppose this request.  The amount awarded to Plaintiffs (the

"Service Award") will be at the discretion of the Court.  The Parties agree that the Court's failure

to approve, in whole or in part, any service award shall not prevent the Settlement from

becoming effective, nor shall it be grounds for termination of the Settlement.

69.    The Parties did not begin to negotiate, discuss, nor reach an agreement regarding

Attorneys' Fees and costs and the Service Awards until after reaching agreement on all other

material terms of this Settlement.

## XII.   RELEASE

70.    Upon the Effective Date of the Settlement, the Releasing Parties shall

automatically be deemed to have fully and irrevocably released and forever discharged

Defendants and each of their present and former parents, subsidiaries, divisions, affiliates,

control persons, predecessors, successors and assigns, and the present and former directors,

officers, employees, agents, servants, insurers, shareholders, attorneys, advisors, insurers,

reinsurers, consultants, representatives, partners, joint venturers, agents, representatives, independent contractors, service providers, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Action or the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the end of the Class Period that were or could have been claimed, raised, or alleged in this Action.

## XIII.   **TERMINATION**

71.     This Settlement may be terminated by either Class Counsel or Defendants by serving on counsel for the opposing Party written notice of termination within 14 days (or such longer time as may be agreed in writing between Class Counsel and Defendants) after any of the following occurrences:

a. the Court fails to preliminarily approve the Settlement on any ground other than the approval of the amount of Attorneys' Fees payable to Class Counsel or the Service Award;

b. the Court fails to grant Final Approval;

c. the Court rejects, materially modifies, materially amends or changes the Settlement on any basis other than the approval of the amount of Attorneys' Fees payable to Class Counsel or the Service Award; an appellate court vacates or reverses the Final Approval Order on any basis other than the approval of the amount of Attorneys' Fees payable to Class Counsel or the Service Award;

d.   the Effective Date does not occur;

e.   in the event more than 15% of the Settlement Class Members opt-out of the

Settlement;

72.   In the event of a termination, this Agreement shall be considered null and void; all

of Plaintiffs', Class Counsel's, and Defendants' obligations under the Settlement shall cease to

be of any force and effect and the Parties shall return to the status *quo ante* in the Action as if the

Parties had not entered into this Agreement. In addition, in the event of such a termination, all of

the Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved.

## XIV.   <u>SETTLEMENT IS A COMPROMISE OF DISPUTED CLAIMS</u>

73.   The Parties understand and acknowledge that this Agreement constitutes a

compromise and settlement of disputed claims.  No action taken by the Parties either previously

or in connection with the negotiations or proceedings connected with this Agreement shall be

deemed or construed to be an admission of the truth or falsity of any claims or defenses

heretofore made, or an acknowledgment or admission by any party of any fault, liability or

wrongdoing of any kind whatsoever.

74.   Neither the Settlement, nor any act performed or document executed pursuant to

or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an

admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class

Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed

to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the

Released Parties, in the Action or in any proceeding in any court, administrative agency or other

tribunal.

75.   In addition to any other defenses Defendants may have at law, in equity, or

otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XV. <u>MISCELLANEOUS PROVISIONS</u>

76. <u>Recitals</u>. The Parties agree that the recitals are contractual in nature and form a material part of this Agreement.

77. <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

78. <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement. This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur.

79. <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

80. <u>Integration</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

81. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

82.   <u>Exhibits</u>.  Any exhibits to this Agreement are hereby incorporated herein and made a part of this Agreement.

83.   <u>Governing Law</u>.  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

84.   <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.

85.   <u>Modification and Amendment</u>.  This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and counsel for Defendants and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

86.   <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

87.   <u>Authority</u>.  Class Counsel (for the Plaintiffs and the Settlement Class Members), and counsel for Defendants, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiffs and Defendants to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this

Agreement to all of the terms and provisions of this Agreement.

88.     Agreement Mutually Prepared.  Neither Defendants nor Plaintiffs shall be

considered to be the drafter of this Agreement or any of its provisions for the purpose of any

statute, case law, or rule of interpretation or construction that would or might cause any

provision to be construed against the drafter of this Agreement.

89.     Independent Investigation and Decision to Settle.  The Parties understand and

acknowledge that they: (a) have performed an independent investigation of the allegations of fact

and law made in connection with this Action; and (b) that even if they may hereafter discover

facts in addition to, or different from, those that they now know or believe to be true with respect

to the subject matter of the Action as reflected in this Agreement, that will not affect or in any

respect limit the binding nature of this Agreement. It is the Parties' intention to resolve their

disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in

furtherance of their intentions, the Agreement shall remain in full force and effect

notwithstanding the discovery of any additional facts or law, or changes in law, and this

Agreement shall not be subject to rescission or modification by reason of any changes or

differences in facts or law, subsequently occurring or otherwise

90.     Receipt of Advice of Counsel.  Each Party acknowledges, agrees, and specifically

warrants that he, she or it has fully read this Agreement and the Release, received independent

legal advice with respect to the advisability of entering into this Agreement and the Release and

the legal effects of this Agreement and the Release, and fully understands the effect of this

Agreement and the Release.

91.     Return of Documents.  The Parties will return or destroy all copies of discovery

and settlement/mediation materials obtained in this litigation from Defendants or third parties

within thirty (30) days after the Effective Date.

92.     <u>Days</u>.  All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.

93.     <u>Stay Pending Court Approval</u>.   Class Counsel and Defendants' Counsel agree to stay all proceedings, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement, until the Effective Date of the Settlement has occurred.  If, despite the parties' best efforts, this Agreement should fail to become effective, the parties will return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement.  The parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Settlement Class Member in, any other proceedings against any of the Released Parties which challenges the Settlement.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

For Plaintiffs Ophelia Parker and Joseph Naso

By: *Ophelia Parker*

*Ophelia Parker*

Date: *Nov. 26, 2018*

within thirty (30) days after the Effective Date.

92.    Days.  All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.

93.    Stay Pending Court Approval.   Class Counsel and Defendants' Counsel agree to stay all proceedings, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement, until the Effective Date of the Settlement has occurred.  If, despite the parties' best efforts, this Agreement should fail to become effective, the parties will return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement.  The parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Settlement Class Member in, any other proceedings against any of the Released Parties which challenges the Settlement.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Joint Stipulation of Settlement and Release as of the date set forth below.

For Plaintiffs Ophelia Parker and Joseph Naso

By: Joseph A. Naso

Date: 11·22·2018

For Defendants Universal Pictures, a division of Universal City Studios, LLC

By:_____

Christopher Miller, General Counsel
_____

Date:_ November 20, 2018 _

For Defendants Legend Pictures, LLC, and Legendary Pictures Funding, LLC

By:_____


_____

Date:_____

For Applied Analytics Solutions, LLC, formerly Legendary Analytics, LLC

By:_____


_____

Date:_____

For Handstack, P.B.C.

By:_____


_____

Date:_____

For Defendants Universal Pictures, a division of Universal City Studios, LLC

By:_____

_____

Date:_____

For Defendants Legend Pictures, LLC, and Legendary Pictures Funding, LLC

By:_____

Ronald E. Hohauser, Chief Financial officer

Date: November 26, 2018_____

For Applied Analytics Solutions, LLC, formerly Legendary Analytics, LLC

By:_____

_____

Date:_____

For Handstack, P.B.C.

By:_____

_____

Date:_____

- 31 -

For Defendants Universal Pictures, a division of Universal City Studios, LLC

By:_____

_____

Date:_____

For Defendants Legend Pictures, LLC, and Legendary Pictures Funding, LLC

By:_____

_____

Date:_____

For Applied Analytics Solutions, LLC, formerly Legendary Analytics, LLC

By:_____

David Vigilante, Senior Vice President - Legal

Date:  November 26, 2018

For Handstack, P.B.C.

By:_____

_____

Date:_____

- 31 -

For Defendants Universal Pictures, a division of Universal City Studios, LLC

By:_____

_____

Date:_____

For Defendants Legend Pictures, LLC, and Legendary Pictures Funding, LLC

By:_____

_____

Date:_____

For Applied Analytics Solutions, LLC, formerly Legendary Analytics, LLC

By:_____

_____

Date:_____

For Handstack, P.B.C.

By:_____
    *For   Hyejin Lee, CEO*

_____

Date: *11/29/18*