# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

OPHELIA PARKER and JOSEPH
NASO,

                **Plaintiffs,**

**v.**                                  **Case No:  6:16-cv-1193-Orl-41DCI**

UNIVERSAL PICTURES,
LEGENDARY PICTURES FUNDING,
LLC, HANDSTACK, P.B.C., LEGEND
PICTURES, LLC and LEGENDARY
ANALYTICS, LLC,

                **Defendants.**

_____

## REPORT AND RECOMMENDATION

    This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES (Doc. 162)** |
| **FILED:** | **November 29, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

    This case stems from a text message marketing campaign for the 2016 motion picture _Warcraft_ (the Movie).  Doc. 97.  Plaintiffs Ophelia Parker and Joseph Naso (collectively, Plaintiffs) alleged that Universal Pictures (Universal), Legend Pictures, LLC, Legendary Pictures Funding, LLC, Legendary Analytics, LLC (collectively, Legendary), and Handstack, P.B.C.

(Handstack) (collectively, Defendants) worked together to send unsolicited text messages promoting the Movie to Plaintiffs' and thousands of other individuals' cellphones in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, et seq, and certain regulations interpreting the TCPA. *Id.* The parties settled the action prior to a judicial determination of class certification. Doc. 150. Now, Plaintiffs move for class certification and preliminary approval of the class action settlement. Docs. 162 (Motion); 163. The Motion is unopposed. Doc. 162 at 5. Upon consideration, the undersigned finds that the Motion is due to be granted in part and denied in part.

## I.   Background

### A.   The Text Message Campaign

In May 2016, prior to the release of the Movie, the companies that created the Movie, Universal and Legendary, contracted with Handstack to perform a text messaging campaign to advertise the Movie. Doc. 97 at ¶¶ 4, 48. As part of this arrangement, Legendary provided Handstack with a list of more than one million email addresses, which Handstack used to match with cellphone numbers. *Id.* at ¶ 4, 73, 86-87. Once this process was complete, Handstack used an automated telephone dialing system (ATDS) to send one or more unsolicited text messages about the Movie to each of the cellphone numbers that it collected. *Id.* at ¶¶ 4, 105, 135, 145, 153.

### B.   The Operative Complaint

In April 2018, Plaintiffs filed the operative, putative class action complaint against Defendants. Doc. 97 (Complaint).[1] In the Complaint, Plaintiffs alleged that they and other similarly situated individuals received one or more unsolicited text messages as a result of

---

[1] The Complaint also named Charlie Fitzgerald III as a plaintiff. Doc. 97. Plaintiffs later moved to withdraw Mr. Fitzgerald as a plaintiff. Doc. 126. The Court granted the motion and, as a result, Mr. Fitzgerald was terminated as a party to this action. Doc. 139.

Defendants' text message campaign in violation of the TCPA and certain regulations interpreting the TCPA. *Id.* Specifically, Plaintiffs asserted four categories of claims against Defendants and, as a result, sought to certify four separate classes. *Id.* at 33-38. First, Plaintiffs claimed that Defendants used an ATDS to send unsolicited text messages to Plaintiffs and the putative class members in violation of the TCPA, 47 U.S.C. § 227(b) (Counts I and II). *Id.* at 33-34. Second, Plaintiffs claimed that Defendants sent unsolicited text messages to Plaintiffs and the putative class members despite their presence on the national Do-Not-Call list in violation of 47 U.S.C. § 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c)-(f) (Counts III and IV). *Id.* at 34-35. Third, Mr. Naso claimed that Defendants sent unsolicited text messages to Mr. Naso and the putative class members outside of the permissible time periods in violation of 47 U.S.C. § 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c)-(f) (Counts V and VI). *Id.* at 35-36. Fourth and finally, Ms. Parker claimed that Defendants sent unsolicited text messages to Ms. Parker and the putative class members after they requested Defendants to cease sending text messages in violation of 47 U.S.C. § 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(d)-(e) (Counts VII and VIII). *Id.* at 36-38. In light of these claims, Plaintiffs requested that they and the putative class members be awarded between $500.00 and $1,500.00 for each unlawful text, as well as injunctive relief prohibiting further violations of the TCPA and its corresponding regulations. *Id.* at 38-40.

### C. The Settlement

The parties participated in several full-day mediation sessions, which ultimately resulted in the settlement of this action. Docs. 141; 146; 150; 163-1 at 3. Plaintiffs now move for class certification and preliminary approval of their class action settlement agreement, which Plaintiffs

have attached, along with the proposed notices and claim form, to the memorandum in support of the Motion.  Docs. 162; 163; 163-1 (Settlement Agreement); 163-2.[2]

### D.  The Settlement Agreement

The parties agreed to the certification of the following classes:

1.  ATDS Class – All persons or entities within the United States who received one or more text messages as part of the *Warcraft* Text Messaging Campaign.[3]

2.  Internal-Do-Not-Call Class – All persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign, one of which was received after the class member submitted a request to not receive additional texts.

3.  National Do-Not-Call Class – All persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign (a) in a 12-month period; and (b) more than 30 days after the placement of their number on the National Do-Not-Call Registry.

4.  Out of Time Class – All persons within the United States who received more than one text message to a residential line as part of the *Warcraft* Text Messaging Campaign, at lease one of which was before 8 A.M. or after 9 P.M. local time at the texted person's location.

Doc. 163-1 at 8-9.  The parties estimated that there are up to 466,779 members in the ATDS Class, 1,897 members in the Internal-Do-Not-Call Class, 51,407 members in the National Do-Not-Call Class, and 4,461 members in the Out of Time Class.  *Id.*

---

[2] In addition to the Agreement and proposed notices and claim form, Plaintiffs also attached the following documents to the memorandum in support of the Motion: 1) a proposed order (Doc. 163-3); 2) the operative complaint (Doc. 163-4); 3) a supplemental expert report from Anya Verkhovskaya (Doc. 163-5); 4) a declaration from Plaintiffs' counsel, Edmund A. Normand (Doc. 163-6); 5) discovery materials (Docs. 163-7; 163-8); 6) a declaration from the mediator that settled the case (Doc. 163-9); 7) the resumes of Plaintiffs' law firms (Docs. 163-10; 163-11); 8) the proposed settlement administrator's resume (Doc. 163-12); 9) a redacted list of the telephone and identification numbers for each member of the proposed classes (Doc. 163-13); and 10) a proposed preliminary settlement administration schedule (Doc. 163-14).

[3] The Agreement defines "*Warcraft* Text Messaging Campaign" as the "text messaging campaign conducted by Handstack in relation to the *Warcraft* film between or around May 2016 through June 2016."  Doc. 163-1 at 8.

In exchange for the release of any and all claims that could have been raised in this action, *Id*. at 25-26, the parties agreed that Legendary will make a total of up to $19,225,515.00 (Settlement Fund) available for the settlement of valid claims, as well as the payment of settlement administration expenses, attorney fees and expenses, and Plaintiffs' service awards.[4]  *Id*. at 10.[5] The maximum settlement award for members of the ATDS class will be $35.00, while the maximum settlement award for members of the Internal-Do-Not-Call, National Do-Not-Call, and Out of Time Classes will be $50.00.  *Id*. at 10-11.[6]  The amount of each claim may be reduced pro-rata if the total amount required to pay each claim exceeds the net amount that remains available in the Settlement Fund after payment of Plaintiffs' service awards, attorney fees and costs,[7] and settlement administration expenses.  *Id*. at 23-25.

## II.   Analysis

### A.  Class Certification

Plaintiffs seek certification of the following classes: 1) the ATDS Class; 2) the Internal Do-Not-Call Class; 3) the National Do-Not-Call Class; and 4) the Out of Time Class.  The undersigned

---

[4] Plaintiffs each request a $5,000.00 service award for their service as class representatives.  Doc. 163 at 14.

[5] The settlement also provides injunctive relief that effectively prohibits the actions giving rise to this case.  Doc. 163-1 at 11-14.

[6] Thus, absent a pro-rata reduction of the settlement awards, the minimum an individual would receive under the Agreement is $35.00 (i.e., an individual who is only a member of the ATDS Class), while the maximum an individual would receive under the Agreement is $185.00 (i.e., an individual who is a member of ATDS, Internal-Do-Not-Call, National-Do-Not-Call, and Out of Time Classes).  *See* Doc. 163 at 12.

[7] Plaintiffs' counsel agreed that they will not seek more than 23.41% of the Settlement Fund to cover their attorney fees.  Doc. 163-1 at 25.  In addition, Plaintiffs' counsel agreed to seek no more than $200,000.00 in costs and expenses from the Settlement Fund.  *Id*.

finds that Plaintiffs have sufficiently established that each of the foregoing classes should be certified.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (internal quotation marks omitted). A party seeking to certify a class action – be it contested or not – bears the burden of demonstrating that: 1) the named plaintiffs have standing to raise each class claim, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); 2) the proposed class is adequately defined and clearly ascertainable, *Carriuolo v. Gen. Motors, Co.*, 823 F.3d 977, 984 (11th Cir. 2016); 3) the putative class meets the numerosity, commonality, typicality, and adequacy of representation requirements set forth in Federal Rule of Civil Procedure 23(a), *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003); and 4) the putative class meets at least one of the three requirements set forth in Federal Rule of Civil Procedure 23(b), *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). The court has broad discretion in determining whether to certify a class and may do so only after conducting a "rigorous analysis" to ensure that the moving party has satisfied all the necessary requirements for certification. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Sers., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010).

### 1. Standing

Plaintiffs argue that they have standing to pursue each of the claims they asserted against Defendants. Doc. 163 at 25.

A plaintiff must demonstrate that he has Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). This requires the plaintiff to establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (internal quotation marks omitted). Therefore, the Court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *Prado-Steiman*, 221 F.3d at 1279.

Plaintiffs have standing to bring each of the claims they asserted against Defendants. Specifically, Plaintiffs alleged that Defendants used ATDS to send unsolicited text messages to Plaintiffs despite their presence on the national Do-Not-Call list. Doc. 97 at 25-28, 33-35 (Counts I-IV). Next, Mr. Naso alleged that Defendants sent unsolicited text messages to Mr. Naso outside of the permissible time periods set forth in the applicable TCPA regulations. *Id*. at 28, 35-36 (Counts V-VI). Finally, Ms. Parker alleged that Defendants sent unsolicited text messages to Ms. Parker after she requested Defendants to cease sending text messages. *Id*. at 27, 36-38 (Counts VII-VIII). Plaintiffs' allegations are sufficient to establish that they suffered an injury in fact as to each claim they asserted against Defendants, that their respective injuries are fairly traceable to Defendants' text messaging campaign, and that Plaintiffs' injuries are likely to be redressed by a favorable judicial decision. Further, as discussed in more detail later in this Report, Plaintiffs' allegations sufficiently establish that they have the same interest and suffered the same injury as the class members they seek to represent. Therefore, the undersigned finds that Plaintiffs have standing to bring each of the claims they asserted against Defendants.

## 2.  Ascertainability

Plaintiffs argue that the definition of each class contains sufficient objective criteria to allow the class members to be identified in an administratively feasible way.  Doc. 163 at 24 (citing Doc. 163-5).

A class must be "adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  This requires the plaintiff to show that the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way."  *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).  The identification of "class members is administratively feasible when it is a manageable process that does not require much, if any, individual inquiry."  *Id.* (internal quotation marks omitted).

The definition of each class contains sufficient objective criteria that would allow an individual to determine whether they are a member of one or more of the classes.  Further, Ms. Verkhovskaya's expert report explains how she cross referenced the cellphone numbers that received texts about the Movie with certain databases, including, but not limited to, several LexisNexis databases and the national Do-Not-Call list, to identify the names and address of upwards of 90% of the members of each class.  Doc. 163-5 at 6-17.  The undersigned finds that the methods employed by Plaintiffs' expert provide an administratively feasible way in which to identify the members of each class.  Therefore, the undersigned finds that each class is sufficiently ascertainable.

### 3. Rule 23(a)

#### i. Numerosity

Plaintiffs argue that each class satisfies the numerosity requirement. Doc. 163 at 16-17.

The first prong of Rule 23(a) requires the plaintiff to show that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no predetermined number of class members that renders the joinder of all class members impracticable, the Eleventh Circuit has observed that fewer than 21 members is insufficient, while more than 40 members is generally sufficient to satisfy the numerosity requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). The plaintiff has a relatively low burden in demonstrating that the class is sufficiently numerous. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). This low burden, however, cannot be satisfied through mere speculation or general allegations concerning the number of class members. *Id.* Instead, the plaintiff must present some evidence establishing the number or a reasonable estimate of putative class members. *Id.* at 1267-68.

The classes range between 1,897 members to 466,779 members. Docs. 163-1 at 8-9; 163-5 at 15-16. The undersigned finds that the number of members in each class is sufficient to meet the numerosity requirement.

#### ii. Commonality

Plaintiffs contend that there are numerous common questions of law and fact for each class and, thus, argue that each class satisfies the commonality requirement. Doc. 163 at 17-18.

The second prong of Rule 23(a) requires the plaintiff to show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not require that all the questions of law and fact raised by the dispute be common," or that the common questions

of law or fact "predominate" over individual issues.  *Vega*, 564 F.3d at 1268.  Instead, commonality

requires the plaintiff to "demonstrate that the class members have suffered the same injury."  *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted).  "This

does not mean merely that they have all suffered a violation of the same provision of law."  *Id*. at

350.  Instead, the claims must depend upon a common contention, "of such a nature that it is

capable of classwide resolution – which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  Thus, the

plaintiff has a relatively low burden in demonstrating commonality, *Williams v. Mohawk Indus.,*

*Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009), because "even a single common question will do."

*Dukes*, 564 U.S. at 359 (internal alterations omitted).

Plaintiffs identified a number of common questions of law and fact that exist in each class,

to wit: 1) whether the device Defendants used to send promotional text messages about the Movie

qualifies as an ATDS; 2) whether Handstack was Universal's and Legendary's actual or apparent

agent; 3) whether Universal and Legendary are liable for the transmission of the text messages;

and 4) whether Defendants entered into a joint venture concerning the text message campaign.

Doc. 163 at 18.  Further, Plaintiffs identified common questions of law and fact unique to the

various classes, to wit: 1) whether Defendants violated the TCPA by sending text messages to

individuals on the national Do-Not-Call list; 2) whether Defendants violated the TCPA by sending

text messages to individuals after they asked Defendants to cease sending text messages; and 3)

whether Defendants violated the TCPA by sending text messages to individuals prior to 8:00 a.m.

or after 9:00 p.m. local time.  *Id*.  The answers to the foregoing questions will be the same for each

class member.  Therefore, the undersigned finds that each class satisfies the commonality

requirement.

### iii. Typicality

Plaintiffs contend that their claims are typical of the claims of the classes they wish to represent and, thus, argue that each class satisfies the typicality requirement.  Doc. 163 at 18-19.

The third prong of Rule 23(a) requires the plaintiff to show that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).   This prerequisite focuses on determining whether there is a sufficient nexus between the class representative's claims and those of the class at large.  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).  Specifically, the "class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)." *Id*.   This does not mean that the class representative's claims and those of the class must be identical.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Instead, once the class representative demonstrates that he was affected by the same unlawful conduct that affected the rest of the class, factual variations among the individual claims generally will not defeat typicality.  *Id*.  The plaintiff has a relatively low burden in demonstrating typicality, which is generally satisfied by showing that the claims of the class and its representatives arise from the same events, practice, or conduct and are based on the same legal theories.  *Id*.

Plaintiffs' claims are typical of the claims of each corresponding class.  Specifically, Plaintiffs alleged that Defendants used ATDS to send unsolicited text messages to Plaintiffs and the members of the ATDS and National Do-Not-Call Classes despite their presence on the national Do-Not-Call list.  Doc. 97 at 25-29, 33-35.  Next, Mr. Naso alleged that Defendants sent unsolicited text messages to Mr. Naso and the Out of Time Class members outside of the permissible time periods set forth in the applicable TCPA regulations.  *Id*. at 28-29, 35-36.  Finally, Ms. Parker alleged that Defendants sent unsolicited text messages to Ms. Parker and the Internal-Do-Not-Call

Class members after they requested Defendants to cease sending text messages.  *Id*. at 27, 29, 36-38.  Plaintiffs' allegations establish that they suffered from the same unlawful conduct as the members of the classes they seek to represent.  Therefore, the undersigned finds that each class satisfies the typicality requirement.

### iv.  Adequacy of Representation

Plaintiffs argue that they have no conflicts of interest with the classes they seek to represent, and their counsel have and will continue to adequately protect the interests of each class.  Doc. 163 at 20.

The fourth and final prong of Rule 23(a) requires the plaintiff to show that the class representatives will fairly and adequately protect the class's interests.  Fed. R. Civ. P. 23(a)(4). This prerequisite applies to the named plaintiffs and their counsel, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003), and "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

The inquiry into the class representatives considers the existence of substantial conflicts of interest between the class representatives and the class.  "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy."  *Valley Drug*, 350 F.3d at 1189.  "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class."  *Id*.

The inquiry into class counsel considers whether counsel will adequately prosecute the case.  In determining whether counsel will adequately prosecute the case, the court must consider

the following factors: 1) the work counsel has done in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  In addition to these factors, the court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]"  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs have actively participated in various aspects of this case, including discovery, which demonstrates an ability and willingness to continue to prosecute this action and represent the interests of each class.  *See* Doc. 163-8 at 7-8, 37-38.  Indeed, there is no claim or evidence of any conflicts of interest between Plaintiffs and the classes they seek to represent.  Therefore, the undersigned finds that Plaintiffs will adequately represent the interests of the classes they seek to represent.

As for class counsel, Plaintiffs request that the Court appoint attorneys William Gray, Edmund Normand, and Alex Couch as class counsel.  Doc. 163 at 25-26.  Messrs. Gray and Normand have significant experience in consumer law, including the TCPA, and have been appointed class counsel in prior litigation.  Docs. 163-6 at 14-15; 163-10; 163-11.  The same, however, cannot be said of Mr. Couch (who is employed at Mr. Normand's law firm) because Plaintiffs have provided no evidence concerning Mr. Couch's knowledge of the law at issue or his experience as class counsel.  *See id*.  Given the absence of such information, the undersigned cannot meaningfully determine whether Mr. Couch will adequately serve as class counsel. Therefore, the undersigned finds that only Messrs. Gray and Normand will adequately serve as class counsel for each class.

### 4. **Rule 23(b)(3)**

Plaintiffs argue that their claims satisfy the requirements for certification under Rule 23(b)(3), which requires the moving party to demonstrated that: 1) "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance); and 2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3). The undersigned will address each element of Rule 23(b)(3) in turn.

### i. **Predominance**

The first prong of Rule 23(b)(3) requires the plaintiff to show that the issues subject to generalized proof and applicable to the class as a whole must predominate over those issues that are subject only to individualized proof. Fed. R. Civ. P. 23(b)(3). Thus, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Common issues can predominate only if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo*, 823 F.3d at 985 (internal quotation marks omitted). On the other hand, common issues do not predominate if "the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues," *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996), such that the plaintiffs "must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Thus, the predominance inquiry is far more demanding than the commonality inquiry, because the court "must take into account the claims, defenses, relevant

- 14 -

facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Id.* at 1254 (internal quotation marks and citation omitted).

There a number of common issues present in each class, to wit: 1) whether the device Defendants used to send text messages to Plaintiffs and the class members qualifies as an ATDS; 2) whether Handstack was Universal's and Legendary's actual or apparent agent; 3) whether Universal and Legendary are liable for the transmission of the text messages; and 4) whether Defendants entered into a joint venture concerning the text message campaign.  In addition to these universal issues, there are other common issues present in each of the classes.  For example, a common issue in the National Do-Not-Call Class is whether Defendants violated the TCPA by sending text messages to individuals on the national Do-Not-Call list.  In comparison, there appears to be little, if any, individualized issues involved in any of the classes.  Therefore, the undersigned finds that common issues predominate each of the classes and, as a result, each class satisfies the predominance requirement.

## ii.  Superiority

The second prong of Rule 23(b)(3) requires the plaintiff to show that a class action is superior to other available methods for  the fair and effective adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  The superiority inquiry focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269.  The matters pertinent to a court's superiority inquiry include: 1) the class members' interests in individually controlling the prosecution of separate actions; 2) the extent and nature of any litigation concerning the controversy already commenced by other members of the class; 3) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and 4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).  Further, the predominance inquiry "has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."  *Klay*, 382 F.3d at 1269.  Thus, if the court "determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."  *Williams*, 568 F.3d at 1358.

The undersigned has previously determined that common issues predominate in each class. This finding weighs strongly in favor of finding that a class action would be superior to resolving each member's claim individually.  *Williams*, 568 F.3d at 1358.  Further, there is no evidence that anyone has brought an individual case involving the same set of facts and legal issues, nor is there any evidence that the class members would have a strong interest in controlling the prosecution of their individual claims.  Rather, the sheer size of each class and the commonality of issues, make class treatment ideal.  *See Youngman v. A&B Ins. and Fin. Inc.*, Case No. 6:16-cv-1478-Orl-41GJK, 2018 WL 1832992, at *6 (M.D. Fla. Mar. 22, 2018) (finding that it would be judicially inefficient to try over 300,000 TCPA claims separately), *report and recommendation adopted by* 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018).  Moreover, there is no evidence that there would be any particular difficulties in managing each class.  Therefore, the undersigned finds that each class satisfies the superiority requirement.

### iii.    Summary

In light of the foregoing, the undersigned recommends that the ATDS, Internal Do-Not-Call, National Do-Not-Call, and Out-of-Time Classes, as defined herein, be conditionally certified for settlement purposes.  Additionally, the undersigned recommends that Plaintiffs be appointed

as class representatives of the ATDS and National Do-Not-Call Classes, that Ms. Parker be appointed as the class representative of the Internal-Do-Not-Call Class, and that Mr. Naso be appointed as the class representative of the Out of Time Class.   Finally, the undersigned recommends that Mr. Gray of Gray Law LLC and Mr. Normand of Normand PLLC be appointed as class counsel.

### B.  Preliminary Approval

Plaintiffs contend that various factors weigh in favor of finding that the parties reached a fair, adequate and reasonable settlement, which was not the product of collusion between the parties.   Doc. 163 at 28-34.   As such, Plaintiffs argue that the Court should preliminarily approve the Settlement Agreement.   *Id*.

"The claims, issues, or defenses of a . . . class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The first step in the approval process is a preliminary finding that the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see Nolan v. Integrated Real Estate Processing*, Case No. 3:08-cv-642-J-34HTS, 2009 WL 10670779, at *6 (M.D. Fla. Sept. 9, 2009) ("[T]he Court must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the Class Members.").  In determining the fairness, adequacy, and reasonableness of a class settlement, the Court considers the following factors: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the anticipated complexity, expense, and duration of litigation; 5) the opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved.  *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir.

2011).    In addition, the Court may also consider the following additional factors: 1) the burdensomeness of the claims procedure; 2) the treatment of the class representative; 3) the terms of settlement in similar cases; 4) the attorney fees award; and 5) the scope of the release.  *Palmer v. Dynamic Recovery Sol., LLC*, Case No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016).  "Although class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms." *Id*. at *3.  However, if the proposed settlement falls within the range of possible approval, then the settlement should be preliminarily approved.  *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

### 1.  The Likelihood of Success at Trial

While Plaintiffs are confident in the merits of their claims, they recognize that there are numerous disputed issues that must be resolved in their favor in order to reach and prevail at trial. For example, Plaintiffs state that there are disputes about whether an ATDS system was used to text Plaintiffs and the class members and whether Universal and Legendary can be held vicariously liable for Handstack's actions.  Doc. 163 at 29-30.  The final issue is of particularly important because, according to Plaintiffs, Handstack is insolvent.  *Id*. at 30.  Thus, even if Plaintiffs were to prevail against Handstack, they will likely be unable to recover any statutory damages if they cannot establish that Universal and Legendary are vicariously liable for Handstack's actions. Thus, prevailing against all parties would be necessary to ensure some form of recovery. Considering the nature and number of disputed issues, the undersigned finds that this factor weighs in favor of finding the settlement to be fair, adequate, and reasonable.

### 2. The Range of Possible Recovery under the TCPA and at which the Settlement is Fair, Adequate, and Reasonable

Plaintiffs claimed that Defendants both negligently and knowingly violated the TCPA and corresponding regulations.  Doc. 97 at 33-38.  Thus, the range of possible recovery under each claim is $0.00 (if Defendants prevail) to $1,500.00 (if Plaintiffs prevail on all claims and the jury agrees to award the maximum statutory damages) for each unlawful text.  47 U.S.C. § 227(b)(3), (c)(5).

Under the Settlement Agreement, the maximum award for members of the ATDS Class is $35.00, while the maximum award for members of the Internal-Do-Not-Call, National Do-Not-Call, and Out of Time Classes will be $50.00.  Doc. 163-1 at 10-11.  Thus, assuming no pro-rata reduction, each member will be eligible to receive an award of $35.00 to $185.00.  Considering the range of potential recovery under the TCPA and the Settlement Agreement and the possibility that Plaintiffs may recover nothing, the undersigned finds that these factors weigh in favor of finding the settlement to be fair, adequate, and reasonable.  *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action).

### 3. The Complexity, Expense, and Duration of Continued Litigation

The parties reached a settlement following the close of discovery and were preparing to file their motions for summary judgment.  In light of the settlement, the Court stayed further proceedings.  Thus, if the Court were not to approve the settlement, the case would proceed with the motions for summary judgment.  As such, considering the numerous claims and disputed issues, there is no doubt that continued litigation would be lengthy, expensive, and complex.  Therefore, the undersigned finds that this factor weighs in favor of finding the settlement to be fair, adequate, and reasonable.

### 4.   The Opposition to Settlement

While the parties have agreed to the settlement, it is too soon to determine whether there is any opposition to the settlement since notice has not been sent to the class members.  Therefore, the undersigned finds that this factor does not carry any significant weight at this point in the proceedings.

### 5.   The Stage of Proceedings at which Settlement was Achieved

As previously mentioned, the parties reached a settlement after the close of discovery.  Thus, the parties had ample time to conduct discovery and judge the strengths and weaknesses of their respective positions.  As such, the parties were prepared to make well-informed decisions concerning settlement.  Therefore, the undersigned finds that this factor weighs in favor of finding the settlement to be fair, adequate, and reasonable.

### 6.   The Presence of Collusion

There is no evidence of collusion between the parties.  Instead, the record demonstrates that the settlement was the product of more than two years of litigation, significant discovery, and three separate mediations supervised by well-respected mediators.  *See* Docs. 163-7; 163-8; 163-9.  Therefore, on this record, the undersigned finds that the settlement was not tainted by any collusion amongst the parties.

### 7.   The Treatment of Class Representatives

Plaintiffs each request a $5,000.00 service award for their service as class representatives.  Doc. 163 at 14.  In support, Plaintiffs argue that such awards are appropriate considering the time, effort, and risk they took in prosecuting this case.  *Id.*  Courts permit service awards to class representatives.  *Coles v. Stateserv Med. of Fl, LLC*, Case No. 8:17-cv-829-T-17AEP, 2018 WL 3860263, at *3 (M.D. Fla. June 19, 2018) (citing *Nelson v. Mead Johnson & Johnson Co.*, 484 F.

App'x 429, 434-35 (11th Cir. 2012)), *report and recommendation adopted by* 2018 WL 4381186

(M.D. Fla. July 19, 2018).  Considering the time and effort Plaintiffs expended (and will continue

to expend) in this case and the risks inherent with brining such an action, the undersigned finds

that the requested service awards are reasonable for the purpose of preliminarily approving the

settlement.  *See id*. (finding $4,000.00 service award for class representative was not unreasonable

for purposes of preliminary approval of settlement).  Therefore, the undersigned finds that this

factor does not negatively affect the fairness, adequacy, and reasonableness of the settlement.

### 8.   The Attorney Fees Award

Under the Settlement Agreement, Plaintiffs' counsel agreed that they will not seek more

than 23.41% of the Settlement Fund to cover their attorney fees.  Doc. 163-1 at 25.  In addition,

Plaintiffs' counsel agreed to seek no more than $200,000.00 in costs and expenses from the

Settlement Fund.  *Id*.  "Attorney's fees awarded from a common fund [must] be based upon a

reasonable percentage of the fund established for the benefit of the class."  *Faught*, 668 F.3d at

1242 (citation omitted).  Courts generally consider a fee request reasonable where the request falls

between 20% and 25% of the settlement fund.  *Id*.  Considering the maximum amount of fees and

costs counsel intends to seek from the settlement fund, counsels' total request for fees and costs is

slightly less than 25% of the settlement fund.  Thus, while Plaintiffs will file a separate motion for

fees and costs prior to the final approval hearing, at this stage of the proceedings, the undersigned

finds that agreed attorney fees and costs are reasonable.  Therefore, the undersigned finds that this

factor does not negatively affect the fairness, adequacy, and reasonableness of the settlement.

### 9.   The Scope of the Release

The release covers any and all claims that could have been raised in this action.  This release

is sufficiently narrow to avoid a general release of any and all claims that Plaintiffs and the

members may have against Defendants.  Therefore, the undersigned finds that this factor does not negatively affect the fairness, adequacy, and reasonableness of the settlement.

### 10. Summary

In light of the foregoing and considering the strong judicial policy favoring settlement, the undersigned finds that the settlement, which is memorialized in the Settlement Agreement, is fair, adequate, and reasonable.

### C.  The Class Notice

Plaintiffs argue that the proposed notice is the best notice that is practicable under the circumstances of this case and that the manner in which the notice will be disseminated is reasonably calculated to apprise the class members of the action and settlement.  Doc. 163 at 26-27.

Following preliminary approval of a settlement, Rule 23 dictates that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Where a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely include the following information in plain, easily understood language: 1) the nature of the action; 2) the definition of the class certified; 3) the class claims, issues, or defenses; 4) that a class member may enter an appearance through an attorney if the member so desires; 5) that the court will exclude from the class any member who requests exclusion; 6) the time and manner for requesting exclusion; and 7) the binding effect of a class judgment on members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Thus, the Rule requires that "individual notice must be sent to all class members whose names and addresses may

be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Additionally, due process requires that the "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 174 (internal quotation marks omitted).

Plaintiffs state that the proposed settlement administrator, JND Legal Administration (JND), will send the proposed short-form notice (Doc. 163-2 at 15-16) to the class members by email. Doc. 163 at 27 (citing Doc 163-1 at ¶ 53). In the event an email cannot be delivered, JND, will mail the affected class members a postcard containing the short-form notice. *Id*.[8] The short-form notice refers to a settlement website, which will be maintained by JND. *Id*. The settlement website will contain the proposed long-form notice (Doc. 163-2 at 3-13), as well as copies of the operative complaint and relevant motions related to the settlement. *Id*.

The short-form notice, which will be sent via email and, if necessary, via mail, does not contain all the required elements set forth in Rule 23(c)(2)(B). Specifically, the short-form notice does not clearly and concisely state that the Court will exclude from the class any member who requests exclusion, the manner by which an individual requests exclusion from the class, and the binding effect of a class judgment on the members. *See* Doc. 163-2 at 15-16. Instead, it appears that the short-form notice attempts to cover these topics by referring the recipient to the long-form notice on the settlement website. *See id*. ("The Long Form Notice available on the Settlement Website listed below explains how to exclude yourself or object."). While the long-form notice

---

[8] Before sending the postcards, the Agreement requires JND to run each affected class member's address through the National Change of Address Database in an effort to determine whether the member has moved to a new address. Doc. 163-1 at 19.

contains all of the requisite disclosures and should be approved, Doc. 163-2 at 3-13,[9] the undersigned is not aware of any authority (nor have Plaintiffs cited any authority) that suggests that deficiencies in the notice that will actually be sent to the class members can be cured by the notice on a settlement website.  Absent such authority, the undersigned finds that the short-form notice is deficient and, thus, should not be approved in its current form.  Instead, in the interest of efficiency, the undersigned recommends that Plaintiffs submit a revised short-form notice that complies with the requirements of Rule 23(c)(2)(B) for the Court's consideration and approval.

Unlike the short-form notice, the undersigned finds no issues with the proposed claim form (Doc. 163-2 at 18-19).  Therefore, the undersigned recommends that the Court approve the claim form.

Finally, as for the manner in which the parties agreed to provide notice to the members, the undersigned finds that the proposed manner of providing notice outlined in the Motion and Settlement Agreement is reasonably calculated to apprise the members of the action and settlement.  Therefore, the undersigned recommends that the Court approve the manner in which notice will be served on the class members.

### D.  The Final Approval Schedule

Plaintiffs proposed the following schedule leading up to the final approval hearing:

1.  The approved long-form notice be posted on the settlement website no later than three business days after the date the Court enters an order on the Motion.

---

[9] There is one notable issue with the long-form notice that the parties <u>must</u> correct before it is placed on the settlement website.  The section addressing the procedures a member must follow to exclude himself from the settlement contains the following sentence: "If you timely exclusion from the Settlement, you will be excluded and will be bound by the judgment entered, and you will not be precluded from prosecuting any timely, individual claim against the Defendants."  Doc. 163-2 at 8.  This sentence is plagued by several glaring issues and, as a result, is internally inconsistent.  Considering the importance of this section, it is imperative that the parties correct the foregoing sentence so each member understands the significance of excluding themselves from the settlement.

2. The approved short-form notice and claim form be emailed to the class members no later than three business days after the date the Court enters an order on the Motion or ten business days after JND receives the Contact Information Records and Cell phone Number List as set forth in the Settlement Agreement, whichever is later.

3. To the extent necessary, the approved short-form notice and claim form be mailed to the class members no later than 21 calendar days after the date the Court enters an order on the Motion.

4. The class members be given 90 calendar days after the date the Court enters an order on the Motion to submit a written claim.

5. The class members be given 35 calendar days from the date the short-form notice and claim form is sent to do the following:
   a. Submit written requests to opt-out of the Settlement Agreement;
   b. Submit objections to the Settlement Agreement;
   c. If the class member intends to appear at the final approval hearing, file a Notice of Intention to Appear with the Court.

6. Plaintiffs file their motion for attorney fees, costs, expenses, and service awards 30 calendar days prior to the date of the final approval hearing.

7. JND post Plaintiffs' motion for attorney fees, costs, expenses, and service awards on the settlement website no later than three business days after the date the motion for fees is filed.

8. The following be done no later than seven calendar days before the date of the final approval hearing:
   a. File responses to any objections to the Settlement Agreement;
   b. JND file proof of sending notice to the class members.

9. The final approval hearing to be set by the Court.[10]

Doc. 163-3 at 7-8.   Upon consideration, the undersigned recommends that the Court adopt the above schedule with the following two exceptions.   First, the undersigned recommends that class members be given 90 calendar days from the date the short-form notice and claim form is sent to submit a written claim.   Second, the undersigned recommends that the parties be required to file a

---

[10] Plaintiffs suggest that the final approval hearing be set approximately 55 calendar days after the date the Court enters an order on the Motion.  Doc. 163-3 at 8.

motion for final approval no later than 14 calendar days before the date of the final approval hearing.

III.     **Conclusion**

Accordingly, it is respectfully **RECOMMENDED** that:

1.   The Motion (Doc. 162) be **GRANTED in part** as follows:

   a.   The Court preliminarily certify the ATDS, Internal-Do-Not-Call, National Do-Not-Call, and Out of Time Classes described in this Report;

   b.   The Court make the following appointments:

      i.   Plaintiffs be appointed as class representatives for the ATDS and National Do-Not-Call Classes;

      ii.   Mr. Naso be appointed as class representative for the Out of Time Class;

      iii.   Ms. Parker be appointed as class representative for the Internal-Do-Not-Call Class;

      iv.   Attorneys William Gray and Edmund Normand be appointed as class counsel for all classes; and

      v.   JND Legal Administration be appointed as the settlement administrator;

   c.   The Court preliminarily approve the Settlement Agreement (Doc. 163-1);

   d.   The Court find that the short-form notice does not comply with Federal Rule of Civil Procedure 23(c)(2)(B) and direct Plaintiffs to file a revised short-form notice form that complies with Federal Rule of Civil Procedure 23(c)(2)(B) for the Court's consideration and approval;

   e.   The Court approve the long-form notice (Doc. 163-2 at 3-13) and claim form (Doc. 163-2 at 18-19);

f.   The Court approve the manner in which notice of this action and settlement will be served on the class members;

g.   The Court stay the deadlines in the Case Management and Scheduling Order pending final approval of the Settlement Agreement; and

h.   The Court approve and adopt the final approval schedule described in this Report.

2.   The Motion (Doc. 162) be **DENIED** in all other respects.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a revised short-form notice for the Court's consideration along with this Report <u>and</u> a joint notice of no objection in order to expedite the final disposition of this case.**

Recommended in Orlando, Florida on February 28, 2019.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy